UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
XIAMEN ITG GROUP CORP., LTD.,

                                 Plaintiff,         **REPORT AND RECOMMENDATION**

   -against-                                    19-CV-6524 (DLI) (ST)

PEACE BIRD TRADING CORP.,

                                 Defendant, and

XING LIN (USA) INTERNATIONAL
CORP., and CRYSTAL VOGUE INC.,

                                 Counterclaim Plaintiffs.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

       Before the Court is a second motion by Xiamen ITG Group Corporation, Limited ("Plaintiff" or "ITG") seeking default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCP" or "Rule") against Peace Bird Trading Corporation, Xing Lin (USA) International Corporation, and Crystal Vogue Incorporated ("Defendants")[1] for twenty-seven counts of breach of contract brought under the United Nations Convention on Contracts for the International Sale of Goods ("CISG"). On August 30, 2024, this Court issued a Report and Recommendation on Plaintiff's first motion for default judgment, recommending that the motion be denied without prejudice on the grounds that Plaintiff had not adequately established liability or damages, which recommendation was adopted in full as the opinion of the District Court on September 26, 2024. On November 15, 2024, Plaintiff filed this second motion for default judgment, seeking to cure the deficiencies identified by the Court, which was referred to this Court

---

[1] While technically counterclaim plaintiffs in this action, both Xing Lin and Crystal Vogue are owned by the same principal as Defendant Peace Bird, and all three are alleged by Plaintiff to have breached contracts for textile purchases. As the interests of Peace Bird, Xing Lin, and Crystal Vogue are aligned for purposes of this motion, the Court, for ease of reference, refers to them collectively as "Defendants."

for a second Report and Recommendation on November 18, 2024, by the Honorable Dora Lizette Irizarry. For the reasons set forth below, the Court respectfully recommends that Plaintiff's second motion for default judgment be DENIED WITHOUT PREJUDICE.

## DISCUSSION

For purposes of the instant motion, the Court incorporates by reference its prior opinion in this case, *Xiamen ITG Grp. Corp. v. Peace Bird Trading Corp.*, No. 19-CV-6524 (DLI) (ST), 2024 WL 5399245 (E.D.N.Y. Aug. 30, 2024), *report & recommendation adopted*, Docket Order (E.D.N.Y. Sept. 26, 2024), and presumes familiarity therewith.

With its first motion for default judgment, Plaintiff submitted well over 1,000 pages of exhibits, including invoices, packing slips, bank records, affidavits, and the like. For its second motion, Plaintiff has not refiled any of those materials on the docket, though it did submit courtesy hard copies of them. Instead, Plaintiff submitted a supplemental memorandum of law, as well as supplemental affidavits and documentary evidence, for the Court to consider in tandem with Plaintiff's first memorandum and first set of evidentiary submissions. *See* Pl.'s Mem. Supp. Default J. at iii–iv ("Pl.'s Mem."), ECF No. 73-6 (summarizing what was discussed in first memorandum and stating that "[t]his memorandum will separately focus on *the factual basis for each transaction and a [sic] review the supporting shipping documents to establish the agreed-upon amount owed by purchasing entity to ITG* for the shipments that were made, received, and remain unpaid" (emphasis added)).

It should be noted that the Court, for its first Report and Recommendation, expended extensive resources painstakingly reviewing Plaintiff's submissions, composing a highly detail-oriented opinion which set forth and analyzed, across thirty-seven pages, the contents of Plaintiff's pleadings and evidentiary submissions. These pages included a lengthy factual and procedural

background detailing the voluminous submissions, as well as fifteen pages of legal analysis, the first ten of which were devoted to the reasons why, in examining the record before it, the Court found itself unable to conclude "that Plaintiff ha[d] met its burden of showing that the pleadings *facially state[d] a claim for liability*." R. & R. at 32 (emphasis added). As a result, the Court respectfully recommended that Plaintiff's motion be denied. R. & R. at 34.

Having so concluded, the Court, of course, had no obligation to discuss the evidentiary documents submitted to support damages. It is, to be sure, well-recognized that a damages inquest cannot be conducted until liability has been established. Yet, the Court devoted still further resources to detail, across five more pages, an itemized list of concerns it had regarding the reasonable certainty of Plaintiff's submissions pertaining to damages. In doing so, the Court explained that, "[s]hould Plaintiff file a new motion for default judgment, the new motion *should also address the following concerns with respect to a damages award*." R. & R. at 34 (emphasis added).

Yet, Plaintiff's instant motion does not address any of the Court's identified concerns regarding whether Plaintiff has adequately stated *prima facie* claims against Defendants, of which the Court had many. Indeed, Plaintiff's memorandum of law on the instant motion does not cite to a *single legal authority*, instead only detailing the record, a discussion which, it appears, aims to cure the deficiencies the Court detailed in the five pages examining Plaintiff's damages submissions. *See* Pl.'s Mem. While the Court must begrudgingly concede that portions of this discussion are enlightening, providing much-needed clarity about the hundreds of pages of shipping records, at least half of which are either partially or entirely written in Chinese (a language this Court does not speak), and much of which is untranslated, most of it merely reiterates the contents of the more than 1,000 pages of documents that the Court already reviewed in painstaking

detail. That the Court did not recount every single detail from every single document in its opinion does not mean that the Court did not review those documents.

There is no clear reason why Plaintiff's lengthy, factual narrative could not have been presented in the form of an affidavit or declaration, leaving the memorandum of law to be, as its name implies, a memorandum discussing the relevant law. Plaintiff's counsel easily could have, for example, sworn or affirmed under penalty of perjury that he had reviewed the record in this case to identify and resolve the discrepancies the Court had identified, and then attested that he had identified the following errors and hereby endeavored to correct the record, before setting forth nearly the entire content of what Plaintiff has, at present, styled as a "memorandum." Alternatively, the narrative correcting the records could also have easily been sworn or affirmed to by one of Plaintiff's two employees who provided supplementary declarations in support of the instant motion. In sum, Plaintiff's "memorandum of law" provides no law, and no argument. Plaintiff, who was granted a twenty-page extension of the page limit for its "memorandum of law," has squandered forty-five pages of textual real estate on what is, in its entirety, a statement of facts.

In doing so, Plaintiff has circumvented the District Court's ordered page limit, in that Plaintiff submitted a *supplementary* memorandum containing facts, to be considered in conjunction with the prior memorandum, containing law.[2] *See* Pl.'s Mem. at iii–iv (summarizing what was discussed in first memorandum and stating that "[t]his memorandum will *separately* focus on *the factual basis for each transaction and a [sic] review the supporting shipping documents to establish the agreed-upon amount owed by purchasing entity to ITG* for the shipments that were made, received, and remain unpaid" (emphasis added)). Even more importantly, Plaintiff has failed, entirely, to address any of the issues the Court explicitly

---

[2] This is notwithstanding the fact that two pages of the second memorandum are not numbered, thus further exceeding the page limit. *See* Pl.'s Mem. at iii–iv.

concluded Plaintiff should be expected to brief for the Court, after the Court expended substantial judicial resources detailing for Plaintiff precisely what the Court required. The Court did so in order to make it as clear and straightforward as possible precisely what was needed to adjudicate this motion, though the resources it expended in doing so were entirely for naught. Moreover, the Court did so via written opinion, rather than by holding a hearing pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, because the highly detailed nature of the filings at issue, the lengthy list of the items the Court set forth to be discussed, and the complexity and novelty of the legal issues presented do not lend themselves well to a discussion on the record, which discussion would be of limited utility to Plaintiff (and to the Court) in preparing, and reviewing, this second motion for default judgment.

The Court is inclined to deny Plaintiff's motion without prejudice so that Plaintiff can resubmit a motion that complies with the Court's clear, and highly detailed, opinion. Far from being a punitive disposition, it is well-recognized that "it is not this Court's obligation to make a party's arguments for it or 'fill in the blanks' on that party's behalf." *Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman*, 969 F. Supp. 2d 278, 287 & n.6, 288–89 (E.D.N.Y. 2013) (Seybert, J.). It is eminently reasonable, for example, for the Court to expect Plaintiff to submit some semblance of a legal analysis addressing the proper interpretation, under the CISG, for the contracts that Plaintiff, for example, apparently breached by sending late shipments.[3] It should be noted that the CISG is a relatively obscure cause of action which courts repeatedly recognize has a paucity of caselaw. *Delchi Carrier SpA v. Rotorex Corp.*, 71 F.3d 1024, 1027–28 (2d Cir. 1995) ("Because there is virtually no caselaw under the Convention, we look to its language and to 'the general principles' upon which it is based.").

---

[3] This is merely an example. Numerous other legal issues were discussed in the Court's opinion.

The Court, in researching this second motion, has not found any CISG cases analyzing how the treaty should apply to a situation where the plaintiff itself has breached the applicable contract, an issue which is relevant to twenty-six of the forty-four shipments for which Plaintiff here seeks judgment. While courts have also noted that the treaty's plain language, the UCC, and general principles of international law should inform courts' interpretations of it, *see, e.g.*, *id.* at 1028, the Court reiterates that it is not obligated to make Plaintiff's arguments for it. Moreover, the identified breaches are but one of numerous issues the Court painstakingly detailed for Plaintiff, with the expectation that Plaintiff would then address them accordingly, and the notion that the Court's opinion would be a tailor-made guide to facilitate that effort.

Plaintiff's submissions, perhaps due to a misunderstanding, appear almost entirely to address the portions of the Court's opinion expressing doubts as to the accuracy of Plaintiff's damages submissions. But again, the Court cannot assess damages until it assesses liability. Moreover, it is difficult to see how one could reasonably misunderstand the Court's opinion, which was very clear. While the Court is reluctant to reiterate its findings yet again, the Court clearly held that Plaintiff had failed to adequately set forth the first element of its claim, the existence of a valid and enforceable contract, because if failed to explain or argue which documents (or conversations) constituted the offer, which constituted acceptance, which constituted the contract, whether the contract had the required definite terms, and whether the "Letters of Payment Guarantee," which were executed by Defendants, constituted a "modification" of the contract terms under the CISG.

To that end, it should be noted that the initial writing between the parties, the "Sales Contract," was often (but not always) signed by whichever defendant was the purchaser. These writings, however, permitted variations in quantity, so Plaintiff, at the time of shipment, sent the

purchasing defendant a "Commercial Invoice" which provided specific quantities, unit prices, and totals. The totals charged in these Commercial Invoices match the sums Plaintiff alleged for each count in the Complaint and Reply. However, the Letters of Payment Guarantee, sent by Plaintiff to Defendant after the items had been loaded on the vessel, were also signed by the purchasing defendant (with a few exceptions), but eleven of these Letters of Payment Guarantee mysteriously have different totals than the Commercial Invoices. One wonders, then—were the Letters of Payment Guarantee contract modifications under the CISG that altered the price owed for those orders? To be sure, the Convention freely provides for contract modifications, both written and oral. If the Letters of Payment Guarantee are modifications, do modifications under the CISG need to contain the same material terms as would an initial contract? If so, the Letters of Payment Guarantee might not pass muster, as they lack unit prices and quantities. Moreover, if the Letters of Payment Guarantee are post-contractual modifications (or attempted post-contractual modifications), should the Court award those sums, or the Commercial Invoice sums? For the contracts that Plaintiff breached, did the breach performance constitute a counteroffer, and the Letter of Payment Guarantee constituted the acceptance (and contract)? For the orders where the Sales Contract, or the Letter of Payment Guarantee, was not signed, what is the governing contract? The Court's opinion begged all these questions, and Plaintiff's memorandum has provided, few, if any, answers.

It is not enough for Plaintiff to simply assume, in a listed series of facts, that the initial writing between the parties consummated the contract without providing a single authority or reasoned basis for why that is the case, or how the Court should (or should not) apply subsequent documents, related to that same transaction, that contradict the "contract" (if it is, indeed, the

contract). Plaintiff must tell the Court *why* it should reach that conclusion, complete with citations to law.

The Court is mindful that this case was filed in 2019, and has languished on the District Court's docket. With that in mind, the Court endeavored to "fill in the blanks on . . . [plaintiff's] behalf." *Johannes Baumgartner*, 969 F. Supp. 2d at 287 & n.6, 288–89. These issues are, to be sure, novel and complex, requiring extensive research, and the Court had little confidence that a hearing pursuant to Rule 55(b)(2) would be especially useful at gleaning reasoned, researched arguments that could serve as a proper substitute for a written submission. The Court has, however, found itself with little caselaw on these issues, and little clarity from Plaintiff. The Court is not at all confident that Plaintiff's assumption, absent explanation or analysis, that the Sales Contract is the governing agreement under a treaty that has no statute of frauds, no parole evidence rule, and freely allows modifications, is correct merely because it is the first written document to be created.

The Court thus, regrettably, finds that it must recommend that Plaintiff's second motion for default judgment be DENIED WITHOUT PREJUDICE.

The Court, in an effort to remedy any confusion, clarifies that while its prior opinion did address, at length, deficiencies the Court identified in Plaintiff's documentary submissions, its analysis as to liability did so because most of those documents are integral to the Complaint, and thus are to be assessed when determining whether Plaintiff adequately stated a valid facial claim for relief. This question determines whether Plaintiff has adequately established liability, as opposed to damages, under the two-part substantive inquiry applicable to motions under Rule 55(b). The Court notes that its discussion with respect to liability, as set forth on pages twenty-four through thirty-four of its opinion, discussed the identified errors and inconsistencies in Plaintiff's submissions *because* those errors tend to either negate the first two elements of a *prima*

*facie* claim for breach of contract, or else impact what writing (or, under the CISG, oral discussion) governs the contracts. The Court thus clarifies that its opinion sought for Plaintiff to file a motion addressing: (1) *why* the documentary issues, especially those related to breaches by Plaintiff, *do not*, as a matter of law, bar Plaintiff from stating a claim under the CISG (if that is the case); (2) *which* writing, writings, oral discussions, and courses of performance should be construed to comprise the agreement between the parties; (3) *whether* any documents constitute modifications; (4) *which* price as between the "Commercial Invoices" and the "Letters of Payment Guarantee" governs (***and why***); (5) *whether* the eleven Sales Contracts that lack signatures are binding, or when, and how, for these transactions, the agreement was consummated, and how that may or may not impact what the governing writing is; (6) whether the separately written and executed LDP Agreement, which is a shipping agreement and *not a sale of goods*, but which is meant to be utilized for the parties' transactions, *is or is not* governed by the CISG; and (7) any other *legal issues* the Court identified as being implicated, or called into question, by the deficiencies the Court identified. All of these factors speak to the Court's assessment of the *prima facie* claims with respect to liability. For all of these issues, Plaintiff need not address each transaction individually if there are multiple transactions that can be said to be similar in type. For example, for the eleven orders where the totals on the Letters of Payment Guarantee differ from the Commercial Invoice sums, Plaintiff may, if applicable, present one argument explaining which writing governs and what contract sum, as between the two, should be awarded.

With respect to damages, the Court clarifies that its discussion of the deficiencies, such as inconsistent pricing related to specific items purchased, should be addressed by presenting *argument* about why a particular price should govern in circumstances where the evidence is contradicted by other evidence.

These arguments, as a whole, would benefit from an assessment of analogous caselaw. For example, there are, from the Court's research, cases that discuss, under the CISG, which writing as between multiple exchanged writings constituted the parties' agreement. The Court would benefit from Plaintiff's views regarding *why* Plaintiff believes a given writing should govern.

Having clarified its prior opinion, the Court respectfully recommends that Plaintiff's motion for default judgment be DENIED WITHOUT PREJUDICE and that Plaintiff be granted a THIRD and FINAL opportunity to brief the issues presented.

### OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Marcella v. Capital Dist. Physicians' Health Plan, Inc.*, 293 F.3d 42, 46 (2d Cir. 2002); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/<br>
Steven L. Tiscione<br>
United States Magistrate Judge<br>
Eastern District of New York

Dated: Central Islip, New York
       September 12, 2025